IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| James M. Hays and Polly A. Hays<br><br>Plaintiff,<br><br>vs.<br><br>Ocwen Loan Servicing, LLC, et al.<br><br>Defendants. | NO. 8:18-CV-00600<br><br>HON. LAURIE SMITH CAMP<br><br>MAG. MICHAEL D. NELSON |

**PLAINTIFFS' BRIEF OPPOSING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

The Plaintiffs, James and Polly Hays ("Hays"), by and through their undersigned attorneys, hereby provide the following Brief Opposing Defendants' Motion for Summary Judgment pursuant to NECivR 7.1(b).

**INTRODUCTION**

This action arose due to multiple non-judicial foreclosure attempts by the mortgage servicer Ocwen Loan Servicing, LLC[1] ("Ocwen") against properties owned by the Hays. The six properties in question are located in Buffalo County, Nebraska. All six properties were part of a bankruptcy action filed by the Plaintiffs in 2009, which restructured and altered the terms of the various loans secured by the properties. Plaintiffs made payments on the various loans and commencing in 2016, Ocwen began rejecting payments tendered under the terms of the bankruptcy plan until ultimately threatening and attempting foreclosure. Plaintiffs filed a Complaint in the District Court of Buffalo County, Nebraska, asking the court for declaratory

---

[1] As stated in the materials offered by Defendants' Ocwen Loan Servicing, LLC was merged into PHH Mortgage Corporation in 2019. However, as this action largely concerns actions taken prior to the merger, this brief will refer to the it as "Ocwen" for ease of reference.

1

relief, an accounting, and damages due to Ocwen's repeated refusal to honor the payments tendered according to the bankruptcy plan. Additionally, Plaintiffs moved for a restraining order prohibiting Ocwen from completing their foreclosures on the properties or commencing any further foreclosure sales. Ocwen subsequently moved to remove this case to this federal Court and, after further discovery and proceedings, this matter is now brought before the Court on Ocwen's Motion for Summary Judgment.

## LAW

Summary Judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. 56(a). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

## STATEMENT OF DISPUTED FACTS

**I.  Loan Payments as Modified by Bankruptcy**

1.  For purposes of this Motion, the Plaintiffs are not contesting the facts alleged in ¶¶ 1 – 13 of the brief submitted by Defendants, namely, the statements about the parties, jurisdiction, and venue, and further, that the Plaintiffs executed notes secured by the various parcels of property in Buffalo County, Nebraska. Defendants' Memorandum in Support of Support of Summary Judgment, ¶¶ 1-13.

2.  Plaintiffs have six loans (the "Loans") with notes secured on the several parcels of real property located in Buffalo County, Nebraska. Compl., ¶¶ 8-15. These six loans will be

referenced by the real property they are secured by, namely, the "1422 Loan," the "321 Loan," the "821 Loan," the "1928 Loan," the "1717 Loan," and the "121-125 Loan" (collectively referred to as "Loans").

3. Plaintiffs are responsible and have been making payments on the Loans in question and have done so for the time period relevant to this lawsuit. Ex. A ¶ 3.

4. On or about May 15, 2009, the Hays filed a Petition for Chapter 11 Bankruptcy with the United States Bankruptcy Court for the District of Nebraska noted as Case Number 09-41355 (the "Bankruptcy"). Compl., ¶ 16.

5. On March 2, 2011, the Hays filed an amended plan ("Amended Plan") in the Bankruptcy. Compl., ¶ 17. Attached and marked as "Exhibit B" is a copy of the Amended Plan.

6. On May 11, 2011, the Bankruptcy Court entered an order approving the Amended Plan (the "Confirmation Order") Compl., ¶ 18. Attached and marked as "Exhibit C" is a copy of the Confirmation Order.

7. On April 12, 2016, the United States Bankruptcy Court for the District of Nebraska entered an Order of Discharge ("Discharge Order") in the Plaintiffs Chapter 11 Bankruptcy Case, Case Number 09-41355. Compl., ¶ 19. Attached and marked as "Exhibit D" is a copy of the Discharge Order.

8. Under the terms of the Amended Plan and Confirmation Order, the six loans in dispute were each modified. Exs. B and C. The required payments were adjusted as part of the bankruptcy reorganization as follows:

    A. The Amended Plan and Confirmation Order each stated that the 1422 Loan's estimated payment would be $343.45. Ex. B at 8; Ex. C at 3. The Amended Plan suggested a principal balance of $52,000.00 for the 1422 Loan, while the Confirmation

3

Order suggested a principal balance of $60,000.00, but both of these were determined based on the property's assessed value. *Id*. This is the only difference between the Confirmation Order's modification and the Amended Plan's modification. *Id*. The assessed value of the property securing the 1422 Loan at that time was actually $52,000.00. Ex. A ¶ 7.

    B.  The Amended Plan and Confirmation Order stated that the 321 Loan's estimated payment would be $373.46. Ex. B at 8; Ex. C at 3.

    C.  The Amended Plan and Confirmation Order stated that the 821 Loan's estimated payment would be $513.94. Ex. B at 8; Ex. C at 3.

    D.  The Amended Plan and Confirmation Order stated that the 1928 Loan's estimated payment would be $373.46. Ex. B at 8; Ex. C at 3. However, both the Amended Plan and the Confirmation Order had different assessed values, which made them each internally inconsistent, namely, the assessed value of $38,505.00 and $60,655.00. *Id*. Based on the former assessed value, payments of $237.08 were needed to keep the 1928 Loan current.[2]

    E.  The Amended Plan and Confirmation Order stated that the 1717 Loan's estimated payment would be $324.47. Ex. B at 8; Ex. C at 1. The 1717 Loan payment was subsequently modified and the Hays made agreed payments of $423.85 after the modification. Ex. A ¶ 10(E)

    F.  The Amended Plan and Confirmation Order stated that the 121-125 Loan's estimated payment would be $373.46. Ex. B at 8; Ex. C at 3

---

[2] As the Defendants are not alleging the 1928 Note is in default, the Defendants' handling of the 1928 Loan and failure to provide explanations of charges and fees is illustrative of the Defendants' conduct with the other Loans and is addressed in this brief for that reason.

4

**II.  Payments Made by Hays under the Bankruptcy Plan**

9.  After the entry of the Confirmation Order, the Hays made their payments on the Loans, including property tax and insurance payments. Ex. A ¶ 9.

10.  Further, the Hays continue to tender payments on the Loans and Ocwen continues to reject the same. Ex. A ¶ 11.

11.  The Hays have produced, and Defendants have cited to and included, a letter from their insurance company stating "Jamie and Polly Hays have maintained property insurance with Scandinavian Mutual Insurance Company [on the Properties]." Exhibit E (Scandinavian Ltrs). Further, the insurance company for the Hays stated, "Coverage has never lapsed or been cancelled. Coverage has been maintained on the above properties by the policy holder since 2011." *Id*. Furthermore, Ocwen was sent the policy Declarations Pages each year on the policies' anniversary dates. *Id*. at 2. Simply put, the Hays have maintained insurance on the properties and Ocwen has been provided with the information on a yearly basis. Ex. A ¶ 17.

12.  At the time of their Bankruptcy, and to a lesser degree at the present, the Hays owned and rented over a hundred properties. Ex. A ¶ 9. Because of this, the Hays dealt with paying several loan payments, several insurance payments, and several tax payments, for many properties other than those which secure the Loans in dispute. *Id*. However, to the best of Plaintiffs' recollection, the Hays made all the tax payments on the several properties that secure the Loans in dispute. *Id*.

**A. Payments on the 1422 Loan**

13.  The Amended Plan and Confirmation Order require that the Hays make monthly payments of $343.45. Ex. B at 8; Ex. C at 3.

14. The Hays made the required payments of $343.45 and have continued to tender payments in this amount since the entry of the Confirmation Order and even after payments were rejected by Ocwen. Ex. A ¶¶ 10-11.

15. Ocwen accepted and received these payments from the Hays since the entry of the Confirmation Order and began rejecting payments in August of 2016, without explanation. Ex. A ¶ 10.A.

16. On or about June 30, 2017, Ocwen alleges they sent Galen Stehlik, the bankruptcy attorney for the Hays, a letter attempting to inform the Hays that, in Ocwen's interpretation of the Confirmation Order, the correct monthly payment was $369.43 and that the Hays had been making insufficient payments of $343.45 since the entry of the Confirmation Order in 2011. Ex. A to Defendants' Memorandum (Affidavit of Gina Feezer) ¶ 15 and at Ex. A-15. In this letter, Ocwen requested that Mr. Stehlik file a motion to re-open the bankruptcy case in order to clarify the Confirmation Order. *Id*, Further, Ocwen acknowledged that if Mr. Stehlik chose not to file the motion, they could file it themselves. *Id*.

17. Plaintiffs are not aware of any steps taken by Ocwen to address the discrepancy between the Amended Plan and Confirmation Order in the Bankruptcy either after the entry of the Confirmation Order or after June of 2017. Ex. A ¶¶ 14-15.

18. Further, Ocwen has failed to provide Plaintiffs' yearly escrow account reports, required by law. Ex. A ¶ 16.

19. Instead, Ocwen acknowledged that the Hays had been making payments in conformity with the amount stated on the Confirmation Order since it was entered in 2011. Ex. A to Defendants' Memorandum (Affidavit of Gina Feezer) ¶ 15 and at Ex. A-15

**B. Payments on the 321 Loan**

20. Defendants are solely claiming that Plaintiffs defaulted on the 321 Loan for nonpayment of real estate taxes. Defendants' Memorandum in Support of Support of Summary Judgment ¶¶ 33-35. As stated above, to the best of Plaintiffs' recollection, the Hays made all the tax payments on the several properties that secure the Loans in dispute. Ex. A ¶ 9.

### C. Payments on the 821 Loan

21. Defendants claim that Plaintiffs defaulted on the 321 Loan for nonpayment of real estate taxes. Defendants' Memorandum in Support of Support of Summary Judgment ¶¶ 40-42. As stated above, to the best of Plaintiffs' recollection, the Hays made all the tax payments on the several properties that secure the Loans in dispute. Ex. A ¶ 9.

### D. Payments on the 1928 Loan

22. Defendants claim that the 1928 Loan is current and that they are not seeking to foreclose on the 1928 Loan. Defendants' Memorandum in Support of Support of Summary Judgment ¶¶ 43-44. However, prior to this dispute, Ocwen was rejecting the tendered payments of $237.08 tendered under the Confirmation Order. Compl., ¶ 25. Additionally, as recently as November 12, 2019, Ocwen has attempted to charge the Hays for amounts not authorized under the Confirmation Order. Ex. A. ¶ 13 and at Ex. A-1.

### E. Payments on the 1717 Loan

23. Defendants claim that Plaintiffs defaulted on the 1717 Loan for failure to make sufficient payments. Defendants' Memorandum in Support of Support of Summary Judgment ¶¶ 19-26.

24. Further, Defendants claim that the Amended Agreed Order Resolving Motion for Relief From Stay ("Amended Order") entered by the bankruptcy court on September 22, 2011, increased the monthly payment due by the Hays on the 1717 Loan to $413.46. Defendants'

Memorandum in Support of Support of Summary Judgment ¶ 21. Attached and marked as "Exhibit F" is a copy of the Amended Order.

25. The Amended Order does not specify which of the numerous loans from the Confirmation Plan it modifies. Ex. E. Neither does it reference a specific filing number for a filed motion for relief from stay that would clarify which loan it involved. *Id*. Despite this, the Hays made adjusted payments of at least $423.85 according to the Defendants' own records, which was greater than the $413.46 in the Amended Order. Ex. F; Ex. A to Defendants' Memorandum (Affidavit of Gina Feezer) ¶ 15 and at Ex. A-13.

26. Further, the Hays continued to make payments of $423.85 until they were rejected in May of 2017 by Ocwen without explanation. Ex. A ¶ 10(E)

**F. Payments on the 121-125 Loan**

27. Defendants claim that Plaintiffs defaulted on the 121-125 Loan for nonpayment of hazard insurance and real estate taxes. Defendants' Memorandum in Support of Support of Summary Judgment ¶¶ 36-39. However, Scandinavian Mutual Insurance Company, the insurance company providing insurance for the properties at the request of the Hays, has unequivocally stated that coverage has been maintained and never lapsed since 2011. Ex. E. Further, as stated above, to the best of Plaintiffs' recollection, the Hays made all the tax payments on the several properties that secure the Loans in dispute. Ex. A ¶ 9.

**III. Evidence Produced in Discovery**

28. In the present case, Defendants issued interrogatories and requests for production of documents. Attached and marked as "Exhibit G" is a copy of Defendants' First Set of Interrogatories and attached and marked as "Exhibit H" is a copy of Defendants' Requests for Production of Documents.

29. The Hays responded the interrogatories and requests for production of documents and several of the responses contained objections to the requests by Ocwen. Attached and marked as "Exhibit I" is a copy of Plaintiffs' Response to First Set of Interrogatories and attached and marked as "Exhibit J" is a copy of Plaintiffs' Response to First Request for Production of Documents.

30. Upon further request by the Defendants' counsel, the Hays supplemented the discovery responses. Attached and marked as "Exhibit K" is a copy of the letter from Defendants' counsel requesting discovery be supplemented and attached and marked as "Exhibit L" is a copy of the Discovery Supplement.

31. Other than the request for supplemental responses by Defendants' counsel in Exhibit K, which specifically requested information on the property insurance, Ocwen did not request any further clarification, supplementation, nor file a motion to compel discovery in the present case. Ex. K.

## ARGUMENT

The Defendants are not entitled to summary judgment because there are issue of material fact concerning the alleged defaults on the Loans for missed payments on the principal balances for the Loans, taxes, and insurance. Further, the Defendants' argument that the Hays failed to produce evidence and therefore cannot succeed at trial is without merit as it presumes that Plaintiffs were obligated to provide requested information despite their valid objections to the requested discovery.

**I. Issues of Material Fact Exists Regarding the Alleged Defaults**

The Hays have repeatedly and consistently alleged that they have made payments on the Loans, paid insurance on the properties securing the Loans, and paid property taxes for the

9

properties. In fact, the Hays continue to tender payment in the amounts specified by the Confirmation Order. As such, material issues of fact exist regarding the status of the Loans and whether, as claimed by Defendants, the Loans are legally in default.

Defendants claim that the Hays have defaulted on the 1422 Loan and 1717 Loan by failing to make sufficient payments. However, the Hays made payments in conformity with the Confirmation Plan and Ocwen accepted the same for several years. Ocwen failed to notify the Hays of any alleged deficiency from 2011 to at least 2015. Nor did Ocwen provide the Hays with yearly escrow statements that would have notified the Hays of potential issues with these loan payments. Instead, the Hays were tasked with repeatedly questioning the increased rates on the premiums and added fees and expenses, for which Ocwen provided no explanation. The issue of an alleged default caused by Ocwen's unilateral assessment of additional fees and expenses not authorized by the Confirmation Order is precisely the reason that the Hays are seeking declaratory relief.

Further, Ocwen failed to address any of these issues before the Discharge Order in 2016. If there were issues in the payments of the premiums under the Confirmation Order, these should have been addressed from the beginning by providing notice to the Hays of the alleged non-conforming payments. Instead, Ocwen chose to accept payments and lie in the weeds rather than address the alleged issue. Simply put, the Hays tendered payment of the premiums for the Loans and if Ocwen refused to accept the tendered payment, made in conformity with the Confirmation Order, any "default" caused by their denying tender cannot be attributed to the Hays.

Further, Defendants claim that the Hays failed to maintain insurance on the properties securing the Loans despite being provided with a clear and unequivocal letter from their insurer stating that coverage has been maintained by the Hays and never lapsed nor been cancelled since

2011. The fact that insurance was not maintained is undoubtedly in dispute given the clear language of this letter.

Lastly, Defendants claim that the Hays defaulted in the payment of property taxes because they did not or failed/refused produce evidence that the Hays made these payments in discovery and therefore must have not paid the same. However, the Hays are claiming they paid the property taxes for these properties. Ex. A ¶ 9. Further, the Hays objected to a number of discovery requests from the Defendants on various grounds. Other than a request for further supplemental discovery regarding insurance, which the Plaintiffs willingly complied within ten (10) days, Defendants made no further inquiries or attempts to obtain further discovery. Nor did Defendants request to depose the Hays, who has disputed the claim that he failed to pay property taxes in the affidavit cited herein. Ex. A ¶ 9.

Therefore, taking the facts in the light most favorable to the Hays, summary judgment ought to be denied because issues of material fact exist regarding whether the Hays have defaulted on the Loans for the reasons claimed by the Defendants.

## II.    Plaintiffs' Production of Evidence

In conducting discovery, Defendants filed interrogatories and requests for production of documents. Ex. G; Ex. H. The Hays responded to these requests, objected to several requests, and further supplemented the discovery at the request of the Defendants. Defendants claim that by objecting to their requests the Hays refused/declined/failed to produce the requested documents. However, Defendants failed to address these by either contacting Plaintiffs' counsel or filing a motion to compel.

Defendants attempt to argue that the Plaintiffs were obligated to reveal information in discovery despite an obligation to do so because of the objections. This is precisely what Justice

White addressed in his concurring opinion in the case of *Celotex Corp. v. Catrett*, cited by the Defendants in their brief. 477 U.S. 317, 328 (1986) (White Concurring). "[I]t is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex*, 477 U.S., 328 (White Concurring). "A plaintiff need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery Rules or by court order" *Id*.

Plaintiffs provided clear evidence that they provide insurance for the properties. Despite this, Ocwen has claimed there was no insurance coverage during the relevant period. This conduct by the Defendants makes it clear that even if Plaintiffs had produced unequivocal evidence of tax payments and the like, as the evidence from Scandinavian on insurance, they nonetheless would claim that someone other than the Hays somehow provided these payments and a default exists on the Loans.

In sum, Plaintiffs are not required to provide evidence unless obligated to do so under the discovery rules or court order. Neither are Plaintiffs obligated to provide testimony of their witnesses prior to trial absent a request for a deposition by the other party. Without such an obligation, Defendants cannot allege that the failure to provide such evidence prior to trial somehow demonstrates that Plaintiffs have no case.

## **CONCLUSION**

For the forgoing reasons, Plaintiff respectfully requests that the Court deny the Defendants' Motion for Summary Judgment as issues of material fact regarding the Loans exist in this case.

                                                JAMES M. HAYS and POLLY A. HAYS,
                                                Plaintiffs

|     |     |
| --- | --- |
| By: | */s/ John A. Sauder* |
|     | John A. Sauder, NSBA #26387 |
|     | Luke T. Deaver, NSBA #23532 |
| For: | DEWALD & DEAVER, P.C. L.L.O. |
|     | PO Box 466 – 413 East Avenue |
|     | Holdrege, Nebraska 68949 |
|     | Phone - (308) 995-8848 |
|     | Fax – (308) 995-6555 |
|     | john@holdregelaw.com |
|     | luke@holdregelaw.com |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of December, 2019, a true and correct copy of the foregoing was served upon the Defendants via the Court's CM/ECF system, which will serve a copy of all electronic filing participants.

*/s/ John A. Sauder*
Plaintiffs' Attorney

13